UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE LUIS VALDEZ,<br><br>                    Petitioner,<br><br>v.<br><br>RAYMOND MADDEN,<br><br>                    Respondent. | Case No.: 18-cv-00734-LAB-BGS<br><br>**REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE TO DENY PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner Jose Luis Valdez ("Petitioner" or "Valdez"), a state prisoner, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Case No. SCE 333769 in the Superior Court of San Diego County. (ECF 1 ("Petition").[1]) A jury found Petitioner guilty of first degree murder of Daniel R., second degree murder of Joseph M.,[2] conspiracy to commit murder, found true criminal street gang and firearms

---

[1] All citations to the Petition and Traverse are to the ECF pagination for ease of reference.
[2] The Court of Appeal's opinion refers to the murder victims by their first names and initial of their last name. The Court follows suit by referring to the victim in the murder at issue in this Petition only by his first name, Joseph. Other individuals are referred to by their last names consistent with the Court of Appeal's decision.

1

allegations as to both murders, and a multiple murder special circumstance.[3] (Lodgment 1, Clerk's Transcript ("CT") Vol. 3 at 780-85.[4]) Petitioner was sentenced to sixty-five years to life in state prison plus life without the possibility of parole. (CT 786-87.)

The Petition raises two grounds for habeas relief: (1) trial court erred in failing to instruct the jury on voluntary manslaughter based on imperfect self-defense[5] and (2) ineffective assistance of counsel for counsel's failure to request an instruction on imperfect self-defense. These claims relate to Petitioner's conviction for the 2002 murder of Joseph.

The Court submits this Report and Recommendation to Chief United States District Judge Larry Burns pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule HC.2 of the United States District Court for the Southern District of California. After consideration of the Petition, Respondent's Answer, Petitioner's Traverse, as well as all lodgments the Court **RECOMMENDS** both claims be **DENIED.**

I. PROCEDURAL HISTORY

On July 21, 2015, a jury found Petitioner guilty of first-degree murder (Cal. Penal Code § 187(a)) of Daniel in 2005 and second degree murder (Cal. Penal Code § 187(a)) of Joseph in 2002. (CT 780, 782.) The jury also found true the allegations as to each murder that Petitioner committed each for the benefit of a criminal street gang and used a firearm in the commission of each. (CT 780, 782.) On October 6, 2015, Petitioner was sentenced to sixty-five years to life in state prison plus life without the possibility of parole. (CT 786-87.)

///

///

---

[3] The jury hung on a third 2003 murder.
[4] All further citations to the Clerk's Transcript reference only the page number of the CT in Lodgment 1 paginated consecutively through volumes.
[5] As explained more fully below, the Court recommends relief be denied on this claim because Petitioner abandoned it in his Traverse. Notwithstanding, the Court has considered this claim on the merits as well.

On March 4, 2016, Petitioner filed an appeal with the California Court of Appeal raising five issues: (1) trial court erred in failing to instruct on imperfect self-defense; (2) trial counsel was ineffective in failing to request an imperfect self-defense instruction; (3) trial court failed to sever the three murder counts; (4) there was an unjustified delay in prosecuting; and (5) the trial court failed to dismiss a juror. (Lodgment 3.) The Court of Appeal affirmed the judgment in Case No. D068994. (Lodgment 6.)

On March 1, 2017, Petitioner filed a petition for review with the California Supreme Court raising two issues: (1) trial court erred in failing to instruct on imperfect self-defense and (2) trial counsel was ineffective in failing to request an imperfect self-defense instruction. (Lodgment 7.) The petition for review was summarily denied in Case No. S240439 on May 10, 2017. (Lodgment 8.)

Petitioner filed his federal Petition on April 13, 2018. (ECF 1.) Petitioner's request to proceed in forma pauperis was granted on April 19, 2018. (ECF 5.) A briefing schedule was issued on April 27, 2018. (ECF 5.) Respondent timely responded to the Petition on July 13, 2018. (ECF 6.) Petitioner requested an extension of time to file his Traverse, and the Court granted it. (ECF 8.) Petitioner filed his Traverse on September 19, 2018. (ECF 10.)

## II. TRIAL PROCEEDINGS[6]

The Court only includes a summary of the trial evidence related to the 2002 murder of Joseph as both of Petitioner's claims relate to that conviction.

///
///

---

[6] The Court provides a summary of the trial evidence regarding the murder of Joseph here with citation to the trial record and then references those portions relevant to each claim analyzed below. The summary is consistent with the Court of Appeal's summary of the facts concerning the murder. (Lodgment 6 [ECF 7-32] at 2-4.) The Court has independently reviewed the state court record. *Nasby v. McDaniel*, 853 F.3d 1049, 1052-55 (9th Cir. 2017).

Mascareno, the individual that drove Petitioner to the location where Joseph was killed, and a cooperating witness, testified that he and other members of Notorious Vandals System ("NVS"), including Petitioner and Renteria,[7] were cruising around looking for rival gang members ("haters") to engage in violence, including to "shoot at somebody." (RT 1627-1631, 2622-23.) Mascareno indicated that "going to look for some haters" was Petitioner's idea. (RT 1630.) He indicated that Petitioner and Renteria both had guns. (RT 1627-1629.) Before encountering Pojas, Lozano, and Joseph that night, Petitioner's group attempted to find rival gang members at two other locations without success. (RT 1634.)

The testimony at trial indicated that Joseph, Lozano, and Pojas, a member of the High Life gang, were hanging out at Pojas home on Belvia Lane when they noticed a car driving suspiciously in the cul de sac;[8] concerned that someone was trying to steal a car or there was some other issue, they went to see what was happening. (Lodgment 2, Reporter's Appeal Transcript ("RT") 904-907, 915, 1083, 1093-1100.)[9] Not sure what to expect, Lozano testified that he picked up a wrench as they walked in the direction of the car. (RT 914-17.) Pojas testified that he got a bat out of a nearby friend's car. (RT 1100-1102.) Joseph was unarmed. (RT 917.) Before they reached the car, Petitioner and Renteria, both NVS gang members, got out of the car. (RT 922, 1105, 1110, 1624, 1638-39.) Three other individuals were still in the car. (RT 1632-33.) Mascareno, Pablo Castillo ("Cero") and Pedro Castillo ("Basic") remained the car. (RT 1632-33.)

---

[7] A stipulation was entered at trial that NVS is a criminal street gang and Petitioner, gang moniker Tadow, was an active member at the time of all three murders. (RT 2935-36.) Mascareno also testified that he knew Petitioner as a member of NVS and that he went by the gang moniker Tadow. (RT 1616.)

[8] Pojas testified that the area was considered High Life territory, he knew Petitioner to be an NVS gang member with the gang moniker Tadow, and NVS was a rival gang. (RT 1085-86, 1105-06.)

[9] All further citations to the Reporters's Transcript reference only the page number of the RT in Lodgment 2 with consecutive pagination through volumes.

Petitioner asked Joseph, Lozano, and Pojas "Where are you from?" (RT 922-25, 1107.) A very brief verbal exchange followed with Joseph and Lozano responding with the general geographic location where they lived (because they were not gang members), Renteria and Petitioner identifying themselves as NVS, and Pojas identifying himself as being from High Life. (RT 924-28, 1107-11.) Renteria then said, "Fuck High Life" and started shooting at Pojas, who ran. (RT 927-28, 1112-1116.) Mascareno, viewing the incident from inside the car, testified that after the brief verbal exchange he could not clearly hear, Renteria shot and started running and that Petitioner went towards the group, including Joseph, and shot Joseph. (RT 1645.) He testified that Petitioner and Joseph (described as the bigger guy as compared to Lozano and Pojas) did not fight at all, rather, they were both standing, Petitioner pulled out his gun, pointed at Joseph, and Petitioner shot him from approximately five feet away right after Renteria started shooting. (RT 1645-46.) At the same time, following Renteria shooting at Pojas, Lozano started chasing Renteria. (RT 928-29.) Lozano also testified that Petitioner was running at Joseph, but he claims they engaged in a brief fist fight before he saw a flash from a gunshot where they were standing and someone falling near the car. (RT 929-31, 935-36.) On cross examination, Pojas testified that Joseph punched Petitioner five to six times, characterizing Joseph as "getting the best of" Petitioner, and then as he saw them stumbling in Petitioner's direction Pojas saw the flash. (RT 1117-25, 1158-60.) He described them as approximately three feet apart at the time. (RT 1160-61.)

Joseph died from a single gunshot wound to the chest. (RT 1238.) He had some bruising on his knuckles that the medical examiner indicated on cross examination could have been caused by punching someone or, as elicited on redirect, from blocking something. (RT 1237, 1244-46, 1256-57, 1260-61.) There was no evidence presented of any injuries to Petitioner.

At the conclusion of the people's case, Petitioner's trial counsel moved to dismiss count 1, the 2002 murder of Joseph. (RT 2684.) The motion was denied. (RT 2685.) During the jury instruction conference, Petitioner's counsel specifically declined the

voluntary murder instruction. (RT 2938, 2942-43.) And, the trial court found that based on the facts presented at trial there was not a legitimate avenue to that instruction. (RT 2943.) Petitioner's counsel also objected during the jury conference to the court giving the mutual combat or initial aggressor instruction, although the trial court found the instruction was supported by the evidence and included it. (RT 2940-42; CT 557-58.) A complete self-defense instruction was given without discussion (CT 555-56) as was the instruction that self-defense could not be contrived, (CT 559).

Petitioner's counsel argued in closing that Joseph and his group were the aggressors, that Joseph was the aggressor in the exchange between he and Petitioner, and Petitioner acted in self-defense by firing only one shot at Joseph after Joseph attacked him. (RT 3088-3105.)

## III. DISCUSSION

As discussed more fully below, the Court recommends denying habeas relief on both claims because the state court adjudication of the claims was neither contrary to, nor an unreasonable application of, clearly established federal law, nor based on an unreasonable determination of the facts. Additionally, as to the first claim the Court recommends denial because Petitioner withdrew it and as to the second claim the Court finds it lacks merit even under a de novo review.

**A. Standard of Review**

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), applicable to this Petition, a habeas petition will not be granted unless the state court's adjudication of claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). "This is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings,

which demands that state-court decisions be given the benefit of the doubt.'" *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)).

"Under the 'contrary to' clause of § 2254(d)(1), a federal court may grant relief only when 'the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts.'" *Loher v. Thomas*, 825 F.3d 1103, 1111 (9th Cir. 2016) (quoting *Williams v. Taylor*, 529 U.S. 362, 413 (2000)). "Under the 'unreasonable application' clause of § 2254(d)(1), 'a state-court decision involves an unreasonable application of the Supreme Court's precedent if the state court identifies the correct governing legal rule . . . but unreasonably applies it to the facts of the particular state prisoners case.'" *Id.* (quoting *White v. Woodall*, 134 S. Ct. 1697, 1705 (2014)). In order to satisfy § 2254(d)(2), a petitioner must show that the factual findings upon which the state court's adjudication of his claims rest are objectively unreasonable. *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

When there is no reasoned decision from the state's highest court, the Court must "'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018); *see also Ylst v. Nunnemaker*, 501 U.S. 797, 805-06 (1991). This presumption may be rebutted "by showing that the unexplained affirmance relied or most likely did rely on different grounds that the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record reviewed. *Wilson*, 138 S. Ct. at 1192. Here, the California Supreme Court issued a summary denial. (Lodgment 8 ("The petition for review is denied.")) And, there is nothing in the record or argued by Petitioner or Respondent suggesting the California Supreme Court's denial relied on different grounds than the Court of Appeal's decision. Accordingly, the Court looks through to the California Court of Appeal's January 31, 2017 decision.

## B. Ground One – Trial Court Error in Failing to Give Jury Instruction on Imperfect Self-Defense

In Ground One of his Petition, Petitioner claims that the trial court erred in failing to instruct the jury on imperfect self-defense. (ECF 1 at 6-7.) Petitioner argues that had the jury been allowed to consider imperfect self-defense, it could have found him guilty of voluntary manslaughter instead of second-degree murder in the killing of Joseph. (*Id.* at 7.)

Respondent contends that Petitioner's claim does not raise a federal question because Petitioner challenges the trial court's discretion under state law. (ECF 6 at 9.) Alternatively, Respondent argues that the state appellate court's rejection of this claim was not contrary to or an unreasonable application of Supreme Court authority. (*Id.* at 10.)

In his Traverse, Petitioner concedes this claim and withdraws it. (ECF 10 at 3.) In withdrawing Ground One, Petitioner specifically concedes this claim "does not raise a federal question" and the state appellate court's rejection of it "was not contrary to nor an unreasonable application of clearly established federal law." (ECF 10 at 3.) The Court recommends the claim be denied on this basis alone, but the Court also recommends the claim be denied for the additional reasons set forth below.

### 1. Imperfect Self Defense

"[I]mperfect self-defense occurs when a defendant acts in the actual but unreasonable belief that he or she is in imminent danger of great bodily injury or death." *People v. Simon*, 1 Cal 5th 105, 132 (citing *People v. Duff*, 58 Cal. 4th 527, 561 (2014)). It "differs from complete self-defense, which requires not only an honest but also a *reasonable* belief of the need to defend oneself." *Id.* (emphasis added). It may not be invoked by "a defendant who—through his own wrongful conduct, such as initiating a physical assault or committing a felony—has created circumstances under which his adversary's attack or pursuit is legally justified." *People v. Szadziewicz*, 161 Cal. App. 4th 823, 834 (2008).

Despite the name, it is not an affirmative defense, rather it is a form of voluntary manslaughter. *Id.* Under California law, [i]f a person kills . . . in the *unreasonable* but good faith belief in having to act in self-defense, the belief negates what would otherwise be malice, and that person is guilty of voluntary manslaughter . . ., not murder." *People v. McCoy*, 25 Cal. 4th 1111, 1116 (2001) (emphasis added). Because it can reduce murder to voluntary manslaughter, it "is considered a lesser and necessarily included offense of murder." *Simon*, 1 Cal 5th at 132

Under California law,"[a] trial court has a duty to instruct sua sponte on a lesser included uncharged offense if there is substantial evidence that would absolve the defendant from guilt of the greater, but not the lesser offense." *Id.* at 132 (citing *People v. Waidla*, 22 Cal. 4th 690, 733 (2000)). "[S]ubstantial evidence is evidence from which a jury could conclude beyond a reasonable doubt that the lesser offense was committed." *Id.* at 132 (citing *People v. Manriquez*, 37 Cal. 4th 547, 587-88 (2005)). Substantial evidence does not include speculative, minimal, or insubstantial evidence. *Id.* at 132.

### 2.     Court of Appeal's Decision

The Court of Appeal concluded that the trial court did not err in not instructing the jury on imperfect self-defense because the record lacked substantial evidence to support giving the instruction. (Lodgment 6 at 28-31.) As the Court of Appeal explained, the evidence Petitioner relied on failed "to show that he shot and killed Joseph unreasonably believing that he was in imminent peril of being killed or suffering great bodily injury, or that he immediately needed to use deadly force to defend himself from Joseph." (*Id.* at 29 (citing *People v. Her*, 181 Cal. App. 4th 349, 352 (2009).)

The Court of Appeal goes on to explain in more detail that the record contained "abundant direct evidence" that Petitioner and his cohorts were planning to kill rival gang members and provoked the confrontation. (Lodgment 6 at 29.) The Court of Appeal cited specific evidence reflecting this, including the testimony of Mascareno that their group was looking for rival gang members to fight and shoot, that Petitioner and Renteria were both carrying guns, and a gang challenge (Where are you from?) from Petitioner preceded the

shooting. (*Id.*) The court acknowledges both the testimony of Mascareno that there was no fist fight between Joseph and Petitioner – he just shot him from five feet away after Renteria fired his gun –and Pojas' version that included a fist fight between Joseph and Petitioner before they stumbled and Petitioner shot Joseph. (*Id.* at 29-30.) The court also noted the absence of any evidence of injuries to Petitioner or any indication he suffered any distress as a result of the encounter, as well as Petitioner outweighing Joseph by 100 pounds. (*Id.* at 30.) The Court of Appeal also explains that Joseph's non-lethal response (assuming there was a fist fight) after Renteria started shooting, did not give Petitioner the right to respond with deadly force. (*Id.* (citing *People v. Jackson*, 28 Cal. 3d 264, 306 (1980) for finding that "predictable conduct by a resisting victim would not constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter.")[10]

### 3. Analysis

To present a federal habeas corpus claim under § 2254, a state prisoner must allege both that he is in custody pursuant to a "judgment of a State court" and that he is in custody in "violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A state's interpretation of its laws or rules provides no basis for federal habeas corpus relief because no federal constitutional question arises. *Estelle v. McGuire*, 502 U.S. 62, 68 (1991); *see also Gilmore v. Taylor*, 508 U.S. 333, 343 (1993) ("instructional errors of state law generally may not form the basis for federal habeas relief")). The failure of a state court to instruct on lesser included offenses in a non-capital case does not present a federal constitutional question." *Windham v. Merkle*, 163 F.3d 1092, 1106 (9th Cir. 1998); *see also Bashor v Riley*, 730 F.2d 1228, 1240 (9th Cir 1984). *Bashor v. Riley* only left open the slim possibility that a "defendant's right to adequate jury instructions on his

---

[10] As is evident from the similarity in the Court of Appeal's factual findings and the Court's own findings from the trial record, outlined above, the Court of Appeal's factual findings are objectively reasonable, and Petitioner has not set forth any basis to overcome the presumption they are correct. *Miller-El*, 537 U.S. at 340.

10

or her theory of the case might, in some cases, constitute and exception to the general rule." *Solis*, 219 F.3d at 929.

Petitioner concedes this claim is not cognizable on federal habeas review in his Traverse and the Court finds this challenge is one of state law to the trial court's decision not to instruct the jury on the lesser included offense of voluntary manslaughter. Even if the Court were to find the claim did raise a constitutional claim based on Due Process, the Court agrees with the California Court of Appeal that there was no error in not giving the instruction on voluntary manslaughter because there was not substantial evidence to support it. *Id.* In *Solis*, the court affirmed a district court's denial of a due process claim based on the trial court's refusal to instruct the jury on the lesser charge of voluntary manslaughter, concluding the "California Court of Appeal found no error in the trial court's refusal to instruct on voluntary and involuntary manslaughter because there was not substantial evidence to support either charge, and we agree." *Id.* The court went on to explain that the defendant had initiated the conflict that led to the victim being shot. *Id.* The court affirmed the lower court's conclusion that this record did not support the voluntary manslaughter instruction. *Id.*

Additionally, if the Court were to consider the challenge one to due process as an instructional error, it would still fail because Petitioner has not shown the "ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." *Estelle*, 502 U.S. at 72; *see also Waddington v. Sarausad*, 555 U.S. 179, 191 (2009). It is not sufficient to show that "the instruction is undesirable, erroneous, or even 'universally condemned.'" *Henderson v. Kibbe*, 431 U.S. 145, 154 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 154 (1973)). As discussed above and below, the Court finds no error in the trial court not giving the instruction because, as the Court of Appeal concluded, it was not supported by the evidence at trial. But even if it should have been given, because it was supported by the evidence, the Court could not find it infected the entire trial given the evidence, discussed above, particularly the jury's conclusion that Petitioner shot Joseph for the benefit of a criminal street gang. The Court of Appeal's

11

accurately found the jury finding at odds with the concept Petitioner was motivated by fear of imminent great bodily injury or death alone in shooting Joseph. As the Court of Appeal explained in addressing harmless error, "the evidence supporting the jury's verdict of second-degree murder of Joseph was so strong, and the evidence supporting a manslaughter conviction based on imperfect self-defense was so comparatively weak, that there is no reasonable probability the claimed instructional error affected the result." (Lodgment 6 at 32.)

Based on the foregoing, the Court finds this claim is not cognizable on federal habeas review, but even if it were, the Court finds the Court of Appeal's decision on the claim is neither contrary to, nor an unreasonable application of clearly established federal law, nor based on an unreasonable determination of the facts. The Court **RECOMMENDS** habeas relief be **DENIED** on this basis as well as Petitioner's concessions that the claim does not raise a federal claim and that the Court of Appeal's decision "was not contrary to nor an unreasonable application of clearly established federal law." (ECF 10 at 3.)

**C. Ground Two – Ineffective Assistance of Trial Counsel**

Petitioner claims his trial counsel was ineffective for failing to request the instruction on voluntary manslaughter based on imperfect self-defense. (ECF 1 at 8.) Additionally, in his Traverse, Petitioner argues the Court of Appeal's denial of his ineffective assistance of counsel claim was contrary to Supreme Court precedent because the Court of Appeal's analysis of this claim lacked citation to *Strickland v. Washington*, 466 U.S. 668, 688 (1984) or application of the standards set forth in *Strickland*. (ECF 10 at 14-19.) Respondent points to the Court of Appeal's conclusion that Petitioner's ineffective assistance of counsel claim failed because the record lacked substantial evidence to support giving the imperfect self-defense instruction and argues that the state court's rejection on this basis was neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent. (ECF 6 at 13-15.)

As set for the below, the Court concludes the Court of Appeal did address the ineffective assistance of counsel claim and the doubly deferential review set out below applies. However, even under de novo review the claim should be denied.

To establish ineffective assistance of counsel, a petitioner must first show his attorney's representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688. Second, a petitioner must show he was prejudiced by counsel's errors. *Id.* at 694. Both the performance prong and the prejudice prong must be established to show constitutionally ineffective assistance of counsel. *Id.* at 697. The Court need not address both prongs if the defendant fails to make a sufficient showing of either one. *Id.*. "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). Representation is constitutionally ineffective only if it "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 687. Put another way, "[t]his requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*

### 1. Performance Prong

*Strickland* requires that "[j]udicial scrutiny of counsel's performance . . . be highly deferential." *Id.* at 689. There is a "strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 686-87; *see also Butcher v. Marquez*, 758 F.2d 373, 376 (9th Cir. 1985) (finding no deficiency in counsel's reasonable choice to forgo a voluntary manslaughter instruction").

Federal habeas review of an ineffective assistance of counsel claim adds an additional layer of deference on top of *Strickland*'s deference to counsel. "Federal habeas review . . . exists as a 'guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods*, 135 S. Ct. at 1376. "This is especially true for claims of ineffective assistance of counsel, where AEDPA review must be 'doubly deferential' in order to afford 'both the state court and the defense attorney the benefit of the doubt.'" *Id.* (quoting *Burt v. Titlow*, 571 U.S. 12, 15

(2013)). Federal courts must "take a highly deferential look at counsel's performance through the deferential lens of [AEDPA]." *Elmore v. Sinclair*, 781 F.3d 1160, 1170 (9th Cir. 2015) (quoting *Cullen*, 563 U.S. at 171-72).

Here, the Court of Appeal found Petitioner's counsel was not ineffective for failing to request the imperfect self-defense voluntary manslaughter instruction because substantial evidence did not support the instruction. (Lodgment 6 at 31.) Petitioner argues the Court of Appeal's decision was inadequate because it provided only a brief statement addressing this claim. However, the analysis is greater than Petitioner asserts because it is part of the same section of the opinion discussed above and incorporates the court's analysis of the trial evidence and whether it supported giving this instruction. Although the Court of Appeal did not cite *Strickland*, the analysis goes to both prongs of *Strickland*.

The Court of Appeal's statement on the ineffective assistance of counsel claim is followed by a case citation, *People v. Szadziewicz*. (Lodgment 6 at 31 (citing 161 Cal. App. 4th 823, 836 (2008)).) The *Szadziewicz* court, addressing an ineffective assistance of counsel claim based on counsel's failure to request an instruction on unreasonable self-defense, ruled much like the Court of Appeal did in this case. *Id.* The court found the evidence did not support application of the instruction and ruled "[c]ounsel's failure to make a futile or unmeritorious motion or request is not ineffective assistance." *Id.* (citing *People v. Price*, 1 Cal. 4th 324, 387 (1991) which applying *Strickland* concluded "[c]ounsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile").

In short, as to deficient performance, the Court of Appeal found there was no deficient performance in not requesting a jury instruction that was not supported by the evidence. As discussed above, the Court of Appeal concluded that: (1) "the record contained abundant direct evidence that [Petitioner] and his cohorts provoked the confrontation;" (2) "nothing in the record suggest[ed] [Petitioner] suffered any injuries from Joseph's punches, that he was at risk of losing consciousness, or otherwise suffer[ed] potentially life-threatening distress;" (3) "Joseph's nonlethal response of punching

[Petitioner] . . . did not give [Petitioner] the right to respond with deadly force;" and (4) "the jury's finding that [Petitioner] shot Joseph for the benefit of [his] gang . . . negate[d] any argument that fear alone motivated [Petitioner] to shoot Joseph." (Lodgment 6 at 29-31.) Based on this evidence, the Court of Appeal reasonably concluded that the instruction was not supported by substantial evidence.

On this Court's doubly deferential review, "the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105. The Court finds there is certainly a reasonable argument that counsel satisfied *Strickland*'s deferential standard in not seeking this instruction because the evidence did not support it. (*See* II.) As discussed below, even on a de novo review, based on this Court's own review of the record, counsel did not err in not requesting this instruction because it was not supported by the evidence. At a minimum, declining to request an instruction the evidence does not support falls within the the wide range of "reasonable professional assistance." *Strickland*, 466 U.S. at 686-87

Even on a de novo review,[11] based on this Court's own review of the evidence, summarized above (*see* II), reflects the same. Petitioner was the instigator. Whether he and his fellow gang members actively drove around town seeking out rival gang members to shoot or decided to drive into a cul de sac in rival gang territory armed with guns, Petitioner and Renteria, both armed, got out of the car, Petitioner issued a gang challenge, and then his cohort started shooting. Additionally, whether Petitioner just immediately

---

[11]Petitioner argues the Court of Appeal failed to sufficiently address his ineffective assistance of counsel claim. As noted above, the Court disagrees. However, out of an abundance of caution the Court additionally includes a de novo analysis of this claim with only the single layer of deference afforded to counsel under *Strickland*. *See Porter v. McCollum*, 558 U.S. 30, 39 (2009) (when state court does not decide whether counsel is deficient, the elements of the *Strickland* claim are reviewed de novo).

shot Joseph right after Renteria started shooting, as described by Mascareno, or engaged in a brief fist fight with him, as Pojas described, Joseph was not armed, Petitioner outweighed him by 100 pounds, and there was no evidence of any injury to Petitioner. Imperfect self-defense does not apply when "a defendant who—through his own wrongful conduct, such as initiating a physical assault or committing a felony—has created circumstances under which his adversary's attack or pursuit is legally justified." *Szadziewicz*, 161 Cal. App. 4th at 834. The Court agrees substantial evidence did not support the instruction and their was no deficiency in counsel's performance in not requesting the instruction.

### 2. Prejudice

Even assuming Petitioner could show defense counsel's performance was deficient in that he should have requested the imperfect self-defense instruction, he must still establish prejudice to be entitled to federal habeas relief. *See Strickland*, 466 U.S. at 687 (holding that both deficient performance and prejudice are required to establish constitutionally ineffective assistance of counsel). For the prejudice prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In determining whether the error "resulted in the required prejudice, a court should presume, . . . that the judge or jury acted according to law," excluding arbitrariness, whimsy caprice, nullification, and the like. *Id.*

First, the trial judge might not have given the instruction even if counsel requested it. The trial court made a finding in the record that based on his "understanding and hearing of the facts, there [was] not a legitimate avenue" to the voluntary manslaughter instruction. (RT 2943.) Second, the evidence the court has detailed numerous times both from the Court of Appeal's analysis and the Court's own indicate a lack of prejudice. (*See* II; III.B.2-3; C.1.) There was no prejudice in the instruction not being given because there was not a reasonable probability the result would have been different given the evidence the Court of Appeal detailed in its opinion and this Court discussed above. There was

abundant direct evidence that Petitioner and his fellow gang members, he and another armed, went looking for and provoked the confrontation planning to kill rival gang members. (*Id.* at 29-30.) After a verbal exchange between rival gang members and shots being fired by Petitioner's cohort, Petitioner either immediately shot Joseph from five feet away or got into a brief fist fight with Joseph, who he outweighed by 100 pounds, and then shot Joseph. (*Id.* at 29-30.) And, there was no evidence of any injury to Petitioner. (*Id.* at 30.)

These factual findings based on the trial evidence are accurate and consistent with the Court's own review of the trial record. As discussed above, the Court of Appeal reasonably found that following Renteria shooting and Joseph's non-lethal punching, assuming he was punching at all, Petitioner would not have had the right to respond with deadly force. (*Id.* at 30 (citing *People v. Jackson*, 28 Cal. 3d 264, 306 (1980) ("predictable conduct by a resisting victim would not constitute the kind of provocation sufficient to reduce a murder charge to voluntary manslaughter"). Additionally, the jury's finding true the allegation that Petitioner murdered Joseph for the benefit of a criminal street gang is at odds with the idea that Petitioner was actually motivated by fear of great bodily injury or death in shooting Joseph. This is a factual finding, made by the jury, that would likely not have been affected by the presence of an imperfect self-defense instruction. *See Strickland*, 466 U.S. at 695-96 (directing courts to consider the totality of the evidence taking into consideration whether or to what extent the findings made are or are not affected by the errors and then using those findings to determine if the defendant has met their burden). In sum, Petitioner has not met his burden to show "that the decision reached would reasonably likely have been different absent errors." *Id.* at 696.

Based on the foregoing, the Court finds the Court of Appeal decision on this claim is neither contrary to, nor an unreasonable application of clearly established federal law, nor based on an unreasonable determination of the facts. Additionally, the Court finds, based on its own de novo review that Petitioner has not established trial counsel's performance was deficient or that any deficiency resulted in prejudice. The Court

17

**RECOMMENDS** habeas relief be **DENIED** on Petitioner's second claim.

## IV. CONCLUSION & RECOMMENDATION

For all the foregoing reasons, **IT IS HEREBY RECOMMENDED** the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) denying the Petition.

**IT IS ORDERED** that no later than **June 18, 2019**, any party to his action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties by **July 2 2019**.

The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

Dated: May 17, 2019

Hon. Bernard G. Skomal
United States Magistrate Judge